Rhenna Navajo EDWARDS, Petitioner,

v.

The STATE OF OKLAHOMA, Respondent.

Civ. No. 76–0028–D.

United States District Court,
W. D. Oklahoma,
Civil Division.

Jan. 20, 1976.

Peter K. Schaffer, Oklahoma City, Okl., for petitioner.

Larry Derryberry, Atty. Gen., Oklahoma City, Okl., for respondent.

## ORDER

DAUGHERTY, Chief Judge.

This cause is before the court upon the Amended Petition for Writ of Habeas Corpus by the above-named petitioner. It appears from the court's examination of the matters filed herein that the petitioner is now in the actual physical custody of Bob Turner, Sheriff of Oklahoma County, State of Oklahoma, pursuant to the judgment and sentence of the District Court of Oklahoma County, Oklahoma in Case No. CRM–74–3211. After a trial by the court without a jury he was found guilty of the crime of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor in violation of 47 O.S. § 11.902 on March 17, 1975.

The court then sentenced the petitioner to serve a term of six months imprisonment in the county jail but suspended the execution of the sentence to confinement except for the first ten days. A fine of $150 and court costs were also imposed. A direct appeal was perfected by the petitioner in the Court of Criminal Appeals State of Oklahoma from the judgment and conviction in said case. The appellate court affirmed his conviction on November 24, 1975. *Edwards v. State,* 46 O.B.J. 2370, 544 P.2d 60.

The petitioner claims that his conviction is constitutionally invalid because the trial court improperly overruled his motion to suppress evidence of a breathalyzer test and results thereof on the ground that the non-malicious destruction of the test ampoule and its contents was destruction of material evidence and therefore a denial of due process.

■ It appears that the petitioner has not exhausted his state remedies. He admits that he has filed no proceeding under the Oklahoma Post Conviction Procedure Act. Absent a showing of unavailability or ineffectiveness of state procedures a state prisoner is required to afford state courts the opportunity to consider and resolve claims of constitutional infirmity before raising these claims in federal court. 28 U.S.C.A. § 2254 and *Hoggatt v. Page,* 432 F.2d 41 (C.A.10 1970). Although the petitioner did pursue an unsuccessful direct appeal from the state judgment of conviction he has chosen to ignore the state post conviction remedy provided by the Oklahoma Post Conviction Procedure Act, 22 O.S.A. § 1080 et seq. Generally the institution of a post conviction action in the state sentencing court is a prerequisite to the granting of habeas relief in a federal court. *Brown v. Crouse,* 395 F.2d 755 (C.A.10 1968); *Omo v. Crouse,* 395 F.2d 757 (C.A.10 1968). It is true that where a state prisoner's habeas corpus petition raises no factual issues and the legal issues have all been considered and rejected by the highest court of the state in a direct appeal, he is not required to relitigate the same issues in the state courts in a post conviction pro-

ceeding. *Chavez v. Baker,* 399 F.2d 943 (C.A.10 1968), cert. denied, 394 U.S. 950, 89 S.Ct. 1289, 22 L.Ed.2d 485. Here, however, there are factual issues to be determined. For example, the petitioner alleges in his Amended Petition that:

"4. (c) the destruction of the test ampoule and its contents made it virtually impossible for the Petitioner to determine whether subsequently conducted tests would have been favorable to the Petitioner.

(d) the test ampoule and its contents could be retested with scientific accuracy had not the State systematically destroyed them,

(f) newly discovered evidence proves that the breath of the Petitioner could have been preserved and retested with accuracy in keeping with scientific standards,".

It is only when the issue is clearly one of law and there are no facts to be developed that the petitioner is not required to avail himself of state post conviction procedures in the sentencing court. *Sandoval v. Rodriquez,* 461 F.2d 1097 (C.A.10 1972). Certainly, the issues presented herein are the type where an evidentiary hearing in a post conviction proceeding could develop the facts more fully. The petitioner recognizes as much in his brief when he states to the court:

"Petitioner contends that his allegations contained in Paragraph 4 of his Amended Petition and with specific reference to subparagraph F, has not been previously determined factually by any court and has not been stipulated to by counsel, and therefore an evidentiary hearing is required."

The rationale for requiring the institution of a post conviction action is set forth in the *Brown* case, supra:

" . . . [T]he post conviction court is empowered to hold an evidentiary hearing and to otherwise develop the facts as they relate directly to the constitutional issues there raised. Thus a record may be made and it may include facts not theretofore detailed. [A]

record, as compared to the initial trial record, may be enlarged and a hearing directed specifically to the issues at hand. [A] state court thus has broad powers to direct a hearing in a manner and direction which provides a complete factual background for the constitutional issues. A post conviction hearing is often of great consequence to the parties for several reasons. One reason is that much of consequence may have happened during the time which has elapsed between the trial and the post conviction hearing, no matter how long it may have been in years. Certain facts may have been overlooked before and other facts may become much more significant by reason of new decisions on points of constitutional law. These and other reasons are the basis for affording the remedy of collateral attack on judgments."
395 F.2d at 756.

The petitioner's assessment of the probability of his success in the state court proceeding affords no basis for this court to intervene. Probability of success is not the test for determining the adequacy of state remedies. The fact that the issues may be determined contrary to the contentions of the petitioner does not establish any ground for questioning the adequacy or effectiveness of the remedy provided for the presentation and determination of the issues. *Boyd v. State of Oklahoma,* 375 F.2d 481 (C.A.10 1967). Nor can the petitioner avoid the requirements of the exhaustion doctrine simply because he has received a short sentence and exhaustion in the state courts might not be completed until after he has been released from imprisonment. *Mitchell v. Schoonfield,* 285 F.Supp. 728 (D.Md.1968).

Included in the Amended Petition for Writ of Habeas Corpus was an application to stay mandate in which the petitioner requested this court to issue an order to the Court of Criminal Appeals for the State of Oklahoma to stay its mandate in petitioner's case. The petitioner now advises that the mandate has been executed and the prisoner taken into custody by the Sheriff of Oklahoma County and therefore that the application is moot.

The petitioner has also filed herein a "Motion for Release of Petitioner Pending Determination of Merits of Amended Petition for Writ of Habeas Corpus". In the present posture of this case, since this court has not secured the custody of the petitioner it may be doubted that the court could properly grant bail to the petitioner. See *Johnston v. Marsh,* 227 F.2d 528, 530 n. 4 (C.A.3 1955). In any event the inherent power of the district court under the habeas corpus statute to order the petitioner's release pending hearing is to be exercised as a matter of discretion by the trial court. *Woodcock v. Donnelly,* 470 F.2d 93 (C.A.1 1972) and *United States ex rel. Slough v. Yeager,* 449 F.2d 755 (C.A.3 1971). Pertinent considerations were pointed out by the court in *Glynn v. Donnelly,* 470 F.2d 95, 97 (C.A.1 1972):

"While the federal power remains, we regard a petitioner who has had a full trial and appeal as in a very different posture than if there had been no prior judicial determination of his rights. Nowhere is this more significant than with regard to bail. As Mr. Justice Douglas said in denying an application for bail in *Aronson v. May,* 1964, 85 S.Ct. 3, 5, 13 L.Ed.2d 6,

'This applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law. He now attacks his conviction in a collateral proceeding. It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case than would be required in a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt. Cf. *Yanish v. Barber,* 73 S.Ct. 1105, 97 L.Ed. 1637 (1953). In this kind of case it is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance

making this application exceptional and deserving of special treatment in the interests of justice. See *Benson v. California,* 328 F.2d 159 (C.A. 9th Cir. 1964).'

In the case cited the court said,

'It would not be appropriate for us at this stage of the proceeding to enlarge this petitioner on bail even if we found that the allegations of his petition for habeas corpus made out a clear case for his release. Something more than that is required before we would be justified in granting bail.[2]

[2] 'There are thousands of prisoners confined in state prisons, any of whom, with a little assistance from their cell mates, would have no difficulty in drafting a petition for writ of habeas corpus which would allege substantial violations of constitutional rights. We do not propose, by ruling in this case, to open the door to the release of those thousands of prisoners on the basis of mere allegations in their petitions.'

*Benson v. California,* 9 Cir., 1964, 328 F.2d 159, 162, cert. denied 380 U.S. 951, 85 S.Ct. 1086, 13 L.Ed.2d 970.

Bail, like habeas corpus, developed primarily as a pretrial institution. See Foote, The Coming Constitutional Crisis in Bail, 113 U.Pa.L.Rev. 959, 968 (1965); *In re Whitney,* 1 Cir., 1970, 421 F.2d 337. Before, and during, trial, the accused enjoys a presumption of innocence, and bail is normally granted. The presumption fades upon conviction, and can be of no significance after the defendant's appeal has been rejected. Correspondingly, the state acquires a substantial interest in executing its judgment. Quite apart from principles of comity, this combination of factors dictates a formidable barrier for those who seek interim release while they pursue their collateral remedies. Cf. *U.S. ex rel. Epton v. Nenna,* S.D.N.Y., 1968, 281 F.Supp. 388; *Baker v. Sard,* 1969, 137 U.S.App.D.C. 139, 420 F.2d 1342. We would express it in these terms. Both in the district court, and on appeal, in the absence of exceptional circumstances—whatever that may include—the court will not grant bail prior to the ultimate final decision unless petitioner presents not merely a clear case on the law, *Benson v. California,* ante, but a clear, and readily evident, case on the facts. Merely to find that there is a substantial question is far from enough."

In *Boyer v. City of Orlando,* 402 F.2d 966 (C.A.5 1968), relied upon by the petitioner, the petitioner had been incarcerated pursuant to a misdemeanor conviction in which he had been denied counsel. Not only was a substantial federal question presented but the probability of success was predicted by prior decisions of the Fifth Circuit and under these circumstances release on bail was considered appropriate. In petitioner's case no health emergency exists and it is not clear that he has raised a substantial constitutional claim on which he has a high probability of success. Appropriate to our disposition are the words of the court in *Mitchell v. Schoonfield,* supra at 732:

" . . . Under these circumstances and having due regard for the delicate matter of comity which is presented when a federal court undertakes to admit to bail one charged under state process, *United States ex rel. Brown v. Fogel,* 395 F.2d 291 (4th Cir. 1968), this Court will not in any event exercise its discretion and admit to bail petitioners Mitchell, Baldwin and Peay during the pendency of any further proceedings that they may bring in this or a state Court."

Accordingly, for the reasons stated it is ordered:

1. The application to stay mandate is dismissed;

2. The Motion for Release is denied;

3. The Amended Petition for Writ of Habeas Corpus is denied without prejudice to the petitioner's right to file for further relief in this court if he is finally denied relief in the state courts.